No. 25-2134

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

Greenpoint Tactical Income Fund LLC,
Debtor.

Ballard Spahr LLP,
Appellant,

v.

Official Committee of Equity Security Holders,
Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin
Case No. 2:21-cv-00175-PP

Originating from the United States Bankruptcy Court for the
Eastern District of Wisconsin
Case Nos. 19-29613 and 19-29617

APPELLANT BALLARD SPAHR LLP'S REPLY BRIEF

**BALLARD SPAHR LLP**

Charles E. Nelson
NelsonC@ballardspahr.com
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
Telephone: (612) 371-2438
Facsimile: (612) 371-3207

Matthew G. Summers
SummersM@ballardspahr.com
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4428
Facsimile: (302) 252-4466

# TABLE OF CONTENTS

                                                                                                   Page

SUMMARY OF THE ARGUMENT ........................................................................................ 1

ARGUMENT IN REPLY ........................................................................................................ 2

    I.      The Committee's argument the statute of fraud applies improperly construes the record evidence *against* Ballard. ....................................................... 2

    II.     Summary judgment is inappropriate on Ballard's promissory estoppel claim. ........................................................................................................................ 6

          A.     The record contains sufficient evidence that Ballard will suffer injustice if GTIF's promise is not enforced. ............................................... 7

          B.     The record contains sufficient evidence that GTIF should have reasonably expected its promise to induce Ballard to act. .......................... 8

          C.     Ballard did not waive its promissory estoppel claim. ................................ 9

    III.    The record shows Hull performed the function of a managing member of GTIF. ................................................................................................................... 10

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baldwin v. Aurora Health Care, Inc.*,
   No. 00-1006, 2001 Wisc. App. LEXIS 202, 242 Wis. 2d 471, 625 N.W.2d 359
   (Wis. Ct. App. Feb. 28, 2001)......................................................................................7, 8

*Barry Healthcare Servs. v. Eisenberg*,
   No. 00-0783, 2001 Wisc. App. LEXIS 381, 244 Wis. 2d 285 .........................................4

*Champine v. Milwaukee Cty.*,
   2005 WI App 75, 280 Wis. 2d 603, 696 N.W.2d 245 (Wis. Ct. App. 2005)...........................6

*Cook & Franke, S.C. v. Meilman*,
   136 Wis. 2d 434, 402 N.W.2d 361 (Wis. Ct. App. 1987)................................................5

*Data Key Partners v. Permira Advisers LLC*,
   2014 WI 86, 356 Wis. 2d 665, 849 N.W.2d 693 (Wis. 2014) .......................................11

*Dresser Indus., Inc. v. Pyrrhus AG*,
   936 F.2d 921 (7th Cir. 1991) ........................................................................................10

*In re Estate of Voss*,
   20 Wis. 2d 238, 121 N.W.2d 744 (Wis. 1963) ...............................................................9

*Hoffman v. Red Owl Stores, Inc.*,
   26 Wis. 2d 683, 133 N.W.2d 267 (Wis. 1965) ......................................................6, 8, 9

*Janke Constr. Co. v. Vulcan Materials*,
   386 F. Supp. 687 (W.D. Wis. 1974), *aff'd*, 527 F.2d 772 (7th Cir. 1976).................7

*Mann v. Erie Mfg. Co.*,
   19 Wis. 2d 455, 120 N.W.2d 711 (Wis. 1963) ...........................................................4, 6

*McLellan v. Charly*,
   313 Wis. 2d 623, 758 N.W.2d 94 (Wis. Ct. App. 2008).................................................9

*Nelson v. Mauer*,
   Nos. 81-627, 1982 Wisc. App. LEXIS 3488, 107 Wis. 2d 738, 321 N.W.2d
   363 (Wis. Ct. App. Apr. 13, 1982)..................................................................................4

*Prize Steak Prod., Inc. v. Bally's Tom Foolery, Inc.*,
   717 F.2d 367 (7th Cir. 1983) ..........................................................................................3

*Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*,
   971 F.2d 37 (7th Cir. 1992) ............................................................................................1

*Skebba v. Kasch*,
    297 Wis. 2d 401, 724 N.W.2d 408 (Wis. Ct. App. 2006) ......................................................8

*Smith v. Indep. Bank Oconomowoc (N.A.)*,
    No. 83-1557, 1984 Wisc. App. LEXIS 3858, 119 Wis. 2d 900 (Wis. Ct. App.
    May 23, 1984) ..................................................................................................................5

*U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*,
    150 Wis. 2d 80, 440 N.W.2d 825 (Wis. Ct. App. 1989) ....................................................8

*W. Leather Lofts Condo. Ass'n v. Busalacchi*,
    No. 2009AP1451, 2010 Wisc. App. LEXIS 441, 2010 WI App 100, 327 Wis.
    2d 799, 788 N.W.2d 384 (Wis. Ct. App. June 15, 2010) ...............................................8, 9

*Wamser v. Bamberger*,
    101 Wis. 2d 637, 305 N.W.2d 158 (Wis. Ct. App. 1981) ................................................10

*Whitehead v. AM Int'l*,
    860 F. Supp. 1280 (N.D. Ill. 1994) ..................................................................................10

**Statutes**

Wis. Stat. § 183.0408(2) ..........................................................................................................11

Wis. Stat. § 802.02(3) ................................................................................................................9

Wisconsin LLC Act ............................................................................................................10, 11

**Other Authorities**

Restatement (Second) of Contracts ............................................................................................7

Statement of Claim ¶¶ 4–6 .......................................................................................................10

Statement of Claim ¶ 8 ...............................................................................................................5

Statement of Claim ¶ 11 .............................................................................................................3

Statement of Claim ¶ 11, App. 0059 ..........................................................................................6

Statement of Claim ¶¶ 17–18 ...................................................................................................10

# SUMMARY OF THE ARGUMENT

The principal error in the Bankruptcy Court's and District Court's decisions was that, in ruling on the Committee's summary judgment motion, each court rendered factual findings weighing the evidence against Ballard to disallow its Claim. On summary judgment, however, the court must construe the evidence *for* the non-moving party, who only must show that a fact finder feasibly *could* decide in its favor. *See Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir. 1992) (summary judgment only appropriate where movant shows their evidence "is so one-sided that . . . [they] must prevail as a matter of law" (quotation omitted)). As more fully set forth in Ballard's Opening Brief, there was ample evidence supporting the Claim such that granting summary judgment was improper, and the District Court's decision holding otherwise should be reversed.

In its argument on appeal, the Committee takes the same tack as the lower courts, rejecting plausible interpretations of the record for explanations that discredit, disregard, or under-weigh the evidence supporting Ballard's Claim. In doing so, the Committee misapplies the summary judgment standard and other applicable law. Although Ballard will not rehash all its opening arguments here, some points raised by the Committee require correcting.

*First*, the Committee's mechanized application of factors Wisconsin courts have held are flexible and non-exhaustive when deciding whether an agreement is covered by the statute of frauds disregards relevant evidence and fails to consider such evidence in the light most favorable to Ballard, as summary judgment demands. When assessing the totality of the evidence, and properly applying the summary judgment standard, the record amply sustains Ballard's claim that GTIF's Agreement was an unconditional undertaking and not a guaranty for a third party's debt.

*Second*, the Committee mischaracterizes Ballard's arguments with respect to Ballard's promissory estoppel claim and wrongly contends Ballard failed to provide evidence in support of the application of promissory estoppel in the event that the statute of frauds would otherwise bar enforcement of the Agreement. To the contrary, Ballard proffered testimony and other evidence demonstrating that a promise was made, and that Ballard reasonably relied on that promise to its detriment in providing legal services to Mr. Hull on GTIF's behalf.

*And third*, the Committee ignores record evidence and relevant law when arguing that Hull is not entitled to indemnification by GTIF for legal fees and cannot salvage its position by citing a judgment rendered in a separate case ordering remedies that have no bearing on the relief Ballard seeks here.

At base, the Committee opposes this appeal by offering its own interpretative gloss of the record. It can make these same arguments again at trial in front of the fact finder. But at this stage of the proceedings, on summary judgment, the Committee's attempts to skew the evidence miss the mark. The record supports Ballard's contentions and Ballard is entitled to have its Claim considered and resolved at trial. The District Court's decision sustaining the Bankruptcy Court's order granting summary judgment against Ballard should be reversed.

**ARGUMENT IN REPLY**

**I. The Committee's argument the statute of fraud applies improperly construes the record evidence *against* Ballard.**

Altogether, the record evidence here, when properly viewed, supports Ballard's contention that GTIF's promise to pay was an independent commitment and not a guaranty in the event Hull failed to pay. The Committee itself recounts the multiple pieces of evidence proffered by Ballard that substantiate its Claim. *See* Comm. Br. at 10. Instead of applying the appropriate standard, the Committee argues the facts should be construed *against* Ballard and unsurprisingly

2

concludes the evidence is insufficient. But when viewed in the appropriate light, Wisconsin courts have held that facts like those adduced by Ballard suffice to show an oral promise is an independent, unconditional undertaking that defeats a statute of frauds defense.

<u>Language and Form of the Promise</u>. The Committee asserts that the "primary factor in determining whether a promise is an original undertaking is whether it was intended to make the promisor primarily liable." Comm. Br. at 10 (citing *Prize Steak Prod., Inc. v. Bally's Tom Foolery, Inc.*, 717 F.2d 367, 369 (7th Cir. 1983)). *Prize Steak* is not as categorical on this point as the Committee suggests, explaining that the promisor's intention "is merely evidence" of the nature of the agreement. 717 F.2d at 369. In any event, GTIF's intention can readily be inferred from the sum of evidence Ballard presents. As the Committee concedes, the record includes sworn testimony that GTIF unconditionally promised to pay Ballard Spahr's fees and expenses in connection with the Investigations and Arbitrations. (Axelrod Decl. ¶ 10, App. 0369). But Ballard hardly relies on the statements in this affidavit alone. GTIF's payment of the fees, sworn acknowledgement of the debt in its bankruptcy schedules, and timing of the promise—as well as the fact that the Committee has provided *no evidence whatsoever* supporting *its* view that GTIF only promised to guaranty Hull's debt—all support the inference that GTIF intended to pay the fees incurred by Hull and others.[1] (*See* Axelrod Decl. ¶ 13, App. 0369; App. 0485–87; Statement of Claim ¶ 11, App. 0059; App. 0110.) That the record does not set forth the precise wording of the promise or other details is, according to Wisconsin courts considering similar circumstances,

---

[1] Contrary to the Committee's presentation of the facts, Ballard's sending the invoices to Hull and the testimony that it was GTIF's "managing members" who entered it into the Agreement are entirely consistent. *See* Comm. Br. at 11–12. As Ballard has argued, Hull functionally was one of GTIF's managers and may have received the bills in any case. Again, the Committee's conclusion is plausible only by weighing the facts in a manner least favorable to Ballard, which is impermissible at the summary judgment stage.

largely irrelevant to determining whether the statute of frauds applies. *See, e.g.*, *Barry Healthcare Servs. v. Eisenberg*, No. 00-0783, 2001 Wisc. App. LEXIS 381, at *2–4 & n.3, *14, 244 Wis. 2d 285, ¶¶ 1–3 & n.3, ¶ 14, 628 N.W.2d 438 (Wis. Ct. App. Apr. 17, 2001) (finding that a promise was an original undertaking only on evidence that the plaintiff "agreed to provide [healthcare] services" to a third party "based on an oral promise made by [the defendant] to pay for these services," and that defendant did make some payments).

<u>Whether the Promise Was Unconditional</u>. In considering this factor, the Committee faults Ballard for providing evidence that persons other than GTIF paid some of Ballard's fees. *See* Comm. Br. at 12. However, such a fact is not determinative. The test under Wisconsin law is not whether the promisor has sole responsibility, but whether the promise at issue was "one to answer for the debt and default of another." *Mann v. Erie Mfg. Co.*, 19 Wis. 2d 455, 462, 120 N.W.2d 711, 715 (Wis. 1963). In other words, the test is whether the promisor agreed to pay a third party's debt *only upon that third party's default*. *Nelson v. Mauer*, Nos. 81-627, 81-630, 1982 Wisc. App. LEXIS 3488, at *4–5, 107 Wis. 2d 738, 321 N.W.2d 363 (Wis. Ct. App. Apr. 13, 1982); *see also Mann*, 120 N.W.2d at 714 (promise was guaranty where plaintiff "first tried to collect from" the third party "before trying to collect from the defendant"). GTIF paid Ballard's fees for October 2017 through March 2018, without any indication Hull had been requested and failed to pay. (*See* Axelrod Decl. ¶ 13, App. 0369; App. 0485–87.) This evidence, viewed in a light most favorable to Ballard, supports concluding GTIF's Agreement was primary and unconditional, and not a promise to pay only if Hull did not.

<u>Timing</u>. The Committee again goes to lengths to identify possible missing details in the record evidence while ignoring that the facts, construed in Ballard's favor, support Ballard's Claim. Uncontroverted testimony establishes that GTIF's promise was made "in connection

4

with" Ballard's engagement and that Ballard relied on the promise when deciding to undertake the engagement. (Axelrod Decl. ¶ 10, App. 0369). And GTIF's payment of ten invoices during the course of Ballard's work on behalf of Hull and others establishes that GTIF's promise was not an after-the-fact deal made in the face of a debtor's default. *C.f. Cook & Franke, S.C. v. Meilman*, 136 Wis. 2d 434, 436–37, 402 N.W.2d 361, 362–63 (Wis. Ct. App. 1987) (evidence that promise was a guaranty covered by the statute of frauds where the defendant promised to pay a firm's legal fees for its representation of a friend that had *concluded* years earlier). At worst, the fact that Hull continued to receive invoices from Ballard for some of the relevant period may suggest that GTIF was not solely responsible for the fees, a finding, as discussed *infra*, that is inapposite to whether the statute of frauds applies.

Motive and Object of the Promise. The Committee's assertion that Ballard adduced no evidence of the motive and purpose behind GTIF's Agreement is simply not true. *See* Comm. Br. at 14. Far from mere speculation, the record is full of evidence that Ballard conducted legal work that inured to GTIF's benefit, whether GTIF had additional counsel or not. *(See, e.g.*, Statement of Claim ¶ 8, App. 0059; Axelrod Decl. ¶¶ 4–9 & Exs. B–F, App. 0369, 0386–91, 0404–11, 0426, 0433–44, 0451, 0480.) And even if GTIF agreed to pay the outstanding legal fees for Hull's or Bluepoint's benefit, it is perfectly reasonable that a company would opt to pay for the legal representation of its manager, as it would benefit from ensuring that its leadership could defend against investigations or litigations in which the company also was implicated. *See Smith v. Indep. Bank Oconomowoc (N.A.)*, No. 83-1557, 1984 Wisc. App. LEXIS 3858, at *5, 119 Wis. 2d 900 (Wis. Ct. App. May 23, 1984) (identifying the reasons why the promisor benefitted from paying a third party's debt). Such an arrangement is unremarkable. (*See* Axelrod Decl. ¶ 11, App. 0369.)

5

Acknowledged Obligation to Pay. Hull's involvement in engaging Ballard and directing its work, *see* Comm. Br. at 15–16, is unsurprising given his role as *de facto* manager for GTIF. GTIF paid ten of Ballard's legal invoices and acknowledged owing Ballard over $200,000 in fees in its sworn schedule. (*See* Axelrod Decl. ¶ 13, App. 0369; App. 0485–87; Statement of Claim ¶ 11, App. 0059; App. 0110.) As the Committee repeatedly contends, Ballard could have sought fees from Hull but did not. This is evidence of Ballard's and GTIF's shared understanding of the terms of the Agreement that the parties entered into a valid and enforceable oral agreement and that GTIF undertook to pay Ballard's fees even in the absence of a default by Hull.

Distinguishing between an original undertaking and a guaranty of third-party debt is a fact-intensive inquiry that resists "mechanical application of generalized rules." *Mann*, 120 N.W.2d at 715–16. The relevant factors are "all considerations in determining the nature of the promise but do not automatically determine it." *Id.* Taking the holistic, multi-factor approach required by Wisconsin law, and viewing the evidence in Ballard's favor, compels the conclusion that the Agreement was an original undertaking by GTIF to pay Ballard's legal fees, and not merely to "answer for the debt and default" of Hull. At the very least, the record is sufficient to create multiple issues of fact that make the Bankruptcy and District Courts' decisions on the Committee's summary judgment motion inappropriate.

**II. Summary judgment is inappropriate on Ballard's promissory estoppel claim.**

Wisconsin law requires three elements to establish a promissory estoppel claim: "(1) the promise was one for which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee; (2) the promise did induce such action or forbearance; and (3) injustice can be avoided only by enforcement of the promise." *Champine v. Milwaukee Cty.*, 2005 WI App 75, ¶ 18, 280 Wis. 2d 603, 618, 696 N.W.2d 245, 252 (Wis. Ct. App. 2005) (citing *Hoffman v. Red Owl Stores, Inc.*, 26 Wis. 2d 683,

698, 133 N.W.2d 267 (Wis. 1965)). Ballard alleged facts satisfying these elements in its Statement of Claim, has pressed promissory estoppel as an alternative form of relief in light of the Committee's statute-of-frauds defense, and has developed sufficient record evidence that summary judgment is inappropriate. The Committee's arguments otherwise are without merit.

### A. The record contains sufficient evidence that Ballard will suffer injustice if GTIF's promise is not enforced.

The Committee argues there is no record evidence supporting the third prong of a promissory estoppel claim, that failure to enforce GTIF's Agreement would not result in injustice to Ballard. The Committee focuses solely on whether Ballard could obtain its remedy elsewhere and guesses, without evidence or support, that it can. *See* Comm. Br. at 17. Wisconsin courts, however, consider myriad factors when weighing the injustice caused by declining to enforce a promise. *See Janke Constr. Co. v. Vulcan Materials*, 386 F. Supp. 687, 697 & n.8 (W.D. Wis. 1974), *aff'd*, 527 F.2d 772 (7th Cir. 1976) (reciting the Restatement (Second) of Contracts). The evidence here aligns with that in similar cases where courts have permitted promissory estoppel to avoid injustice. *See* Op. Br. at 14–16.

Take *Baldwin v. Aurora Health Care, Inc.*, the case cited by the Committee. There, on appeal, the defendant challenged the jury's verdict sustaining the plaintiff's promissory estoppel claim, arguing the trial court failed to consider the injustice prong. No. 00-1006, 2001 Wisc. App. LEXIS 202, at *1–3, 242 Wis. 2d 471 at 3–4, 625 N.W.2d 359 (Wis. Ct. App. Feb. 28, 2001). The appellate court disagreed, finding the risk of injustice was "implicit" in the trial court's assessment of the underlying facts: after being promised by the defendant health system that she could transition to work for them in a different practice, the plaintiff healthcare practitioner terminated her existing practice only to learn after the fact that the defendant would not employ her. *See id*. Given the plaintiff's "substantial action" in terminating her practice, a response to its

7

promise the defendant reasonably should have foreseen, the court concluded "the injustice factors . . . [were] satisfied." *Id.*

Here, the record shows that GTIF promised to pay Ballard's legal fees, that Ballard reasonably relied on that promise in providing over $250,000 in legal services—a "definite and substantial" act and one which corroborates the making of the promise by GTIF—and that GTIF should have foreseen that its promise would induce Ballard to act. *See, e.g.*, *Skebba v. Kasch*, 297 Wis. 2d 401, 411–12, 724 N.W.2d 408, 413–14 (Wis. Ct. App. 2006) (citing and discussing *U.S. Oil Co. v. Midwest Auto Care Servs., Inc.*, 150 Wis. 2d 80, 89, 440 N.W.2d 825, 828 (Wis. Ct. App. 1989)). Considering all relevant factors as determined by Wisconsin courts, the evidence supports Ballard's position that injustice can only be avoided by enforcing GTIF's promise. At the very least, deciding the third prong—a policy question that requires a fully developed record (like whether Ballard will be entitled to other forms of relief)—at this stage is premature. *See, e.g.*, *W. Leather Lofts Condo. Ass'n v. Busalacchi*, No. 2009AP1451, 2010 Wisc. App. LEXIS 441, at *12, 2010 WI App 100, ¶ 22, 327 Wis. 2d 799, 788 N.W.2d 384 (Wis. Ct. App. June 15, 2010) (holding it is premature to consider the policy prong of promissory estoppel standard until "the facts in [the] case are determined by a jury"); *see also Hoffman*, 26 Wis. 2d at 701–02 (explaining the injustice element requires the court's determination of the *remedies* available to the party seeking to have the promise enforced).

### B. The record contains sufficient evidence that GTIF should have reasonably expected its promise to induce Ballard to act.

The record also contains enough for the factfinder to conclude that Ballard satisfies the first prong of promissory estoppel, that GTIF should have reasonably expected the Agreement to induce Ballard's actions. In arguing otherwise, the Committee mischaracterizes Ballard's burden in establishing this element as well as the extent of the record evidence that supports it.

The key flaw appears in the Committee's argument that Ballard fails to show that GTIF reasonably expected Ballard to act in reliance on the Agreement. *See* Comm. Br. at 19–20. This misinterprets Wisconsin law on promissory estoppel. The first element of the claim sets forth an *objective* test: whether the promisor *should have* reasonably expected to induce action or forbearance, not whether the promisor did in fact have such expectations. *See Hoffman*, 26 Wis. 2d at 698; *cf. McLellan v. Charly*, 313 Wis. 2d 623, 652–53, 758 N.W.2d 94, 108–09 (Wis. Ct. App. 2008) (assessing the objective reasonableness of the plaintiff's reliance on the defendant's promise). Determining whether this prong is met requires considering all the facts of and the nature of the parties' promise and resulting action. *See, e.g.*, *Busalacchi*, 2010 Wisc. App. LEXIS 441, at *12, 2010 WI App 100, ¶ 22.

Ballard has proffered sworn testimony that Ballard would not have agreed to represent Hull absent GTIF's promise, which Ballard reasonably relied upon when rendering legal services. (*See, e.g.*, Axelrod Decl. ¶¶ 10–12, App. 0369.) But the record contains more than just Ballard's say-so. *Contra* Comm. Br. at 19–20. Faced with government investigations and costly litigation, GTIF's promise to pay for the legal expenses incurred by a *de facto* controlling officer and related entities was unextraordinary. (Axelrod Decl. ¶ 11, App. 0369.) The available evidence shows GTIF should reasonably have expected its promise to induce Ballard to act, satisfying the first prong of promissory estoppel.

### C. Ballard did not waive its promissory estoppel claim.

Finally, Ballard did not waive its promissory estoppel claim. Under Wisconsin law, estoppel is a *defense* to the statute of frauds and grounds for enforcing an oral promise that otherwise may be barred. *See In re Estate of Voss*, 20 Wis. 2d 238, 244, 121 N.W.2d 744, 748 (Wis. 1963); Wis. Stat. § 802.02(3) (recognizing estoppel as an affirmative defense). In other words, the claim for relief remains GTIF's Agreement, which was asserted in Ballard's Statement

of Claim. (*See id.* ¶ 12, App. 0059.) It was entirely appropriate, therefore, that Ballard first argued promissory estoppel in response when the Committee made a new contention—for the first time in its summary judgment motion, *see* Comm. Sum. J. Br. at 12–14, App. 0126–28—that the statute of frauds precluded Ballard's Claim. *See, e.g.*, *Wamser v. Bamberger*, 101 Wis. 2d 637, 639–45, 305 N.W.2d 158, 159–61 (Wis. Ct. App. 1981) (considering whether plaintiff successfully raised issue at summary judgment that defendant was estopped from asserting statute of frauds, the basis for defendant's motion).

Even if Ballard should have asserted promissory estoppel earlier in the proceedings, no waiver occurred. Ballard's Statement of Claim asserts sufficient facts to give rise to a promissory estoppel claim, *see* Statement of Claim ¶¶ 17–18, App. 0061, and the parties had ample opportunity to argue—and the Bankruptcy Court and District Court ample opportunity to consider—the claim in the proceedings below. *See Whitehead v. AM Int'l*, 860 F. Supp. 1280, 1286 (N.D. Ill. 1994); *Dresser Indus., Inc. v. Pyrrhus AG*, 936 F.2d 921, 928 (7th Cir. 1991). No waiver occurred, and the District Court's decision sustaining summary judgment against Ballard's promissory estoppel claim should be reversed.

**III.     The record shows Hull performed the function of a managing member of GTIF.**

Finally, the Committee's arguments that Hull is not entitled to indemnification from GTIF under the Operating Agreement and Wisconsin LLC Act—Ballard's alternative theories of relief—are misplaced. *First*, contrary to the Committee's claims otherwise, record evidence shows that Hull fulfilled the role of GTIF's manager, including that he executed the Operating Agreement on GAM II's behalf and directed Ballard's legal work that benefitted a host of related individuals and entities, including GTIF. (*See, e.g.*, App. 0155; Statement of Claim ¶¶ 4–6, App. 0058; App. 0162–263.) *Second*, although the respective laws governing corporations and LLCs may diverge on some issues, they are alike in that they both encourage or require indemnification

for officers and managers, *compare* Wis. Stat. § 183.0408(2) (LLCs), *with id.* §§ 180.0851–0855 (corporations), and both are animated by the legislature's goal of incentivizing individuals to serve as officers by shielding them from liability they might face while acting in an official capacity. *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶ 55, 356 Wis. 2d 665, 690, 849 N.W.2d 693, 705–06 (Wis. 2014). Interpreting the indemnification provisions of either the GTIF Operating Agreement or the Wisconsin LLC Act to carve out Hull would be contrary to the intent of each and lead to an outcome that would undermine each provision's purpose. *And third*, the judgment entered in the SEC Case—which enjoins GTIF from paying any further fees *to Hull himself*, SA 0371—does not alter this analysis, as it does not bar GTIF from making payments to *Ballard* based on debts incurred pursuant to contractual or other indemnification obligations.

## CONCLUSION

For the reasons set forth here and in its Opening Brief, Ballard respectfully requests that the Court reverse the District Court's Order affirming the Bankruptcy Court's Order entering judgment for the Committee, and allow Ballard such other and further relief as the Court finds just and proper.

Dated: October 29, 2025

Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Charles E. Nelson*
Charles E. Nelson
NelsonC@ballardspahr.com
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2119
Telephone: (612) 371-2438
Facsimile: (612) 371-3207

Matthew G. Summers
SummersM@ballardspahr.com
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 252-4428
Facsimile: (302) 252-4466